UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSEPH THOMAS REINER,

    Petitioner,

v.                                             Case No. 2:15-cv-125
                                                  HON. ROBERT J. JONKER

JEFFREY WOODS,

    Respondent.
_____/

**REPORT AND RECOMMENDATION**

Petitioner Joseph Thomas Reiner filed this petition for writ of habeas corpus challenging his September 14, 2012, jury convictions for first degree felony murder in violation of Mich. Comp. Laws § 750.316(1)(b), assault with intent to murder in violation of Mich. Comp. Laws § 750.83, and first degree home invasion in violation of Mich. Comp. Laws § 750.110a(2). Petitioner was sentenced to life without parole for his murder conviction, 37 years 6 months to 60 years for his assault conviction, and 12 years and 6 months to 20 years for his home invasion conviction.

Petitioner was convicted of breaking into the home of 69 year old JoAnne Eisenhardt. After he broke down the door of her home, he stabbed Eisenhardt in the neck. Eisenhardt required surgery to remove two knives in her neck. Unfortunately, Eisenhardt never fully recovered and she died 7 months later. During the robbery, Defendant stole Eisenhardt's purse and jewelry. Petitioner was on parole at the time he committed these crimes. Petitioner also committed another home invasion and stole a car that he used to drive to that state of New York, where he was ultimately arrested. The respondent has filed an answer and has complied with Rule

5 of the Rules Governing Section 2254 Cases in the United States District Courts.  The parties have briefed the issues and the matter is now ready for decision.

> Petitioner argues that:
>
> I Petitioner is entitled to a new trial because he was deprived the effective assistance of counsel where counsel did not consult with or call an expert witness to dispute the conclusion that the death was homicide.
>
> II. Petitioner was denied a fair trial by the erroneous admission of tainted identifications by Allen Pauli and Thomas Kosciolek after each was shown a single photograph image of Petitioner.
>
> III. The Court denied Petitioner his 6th Amendment right of confrontation and his right to due process by erroneously allowing into evidence hearsay statements by pawn broker Hadrian Lewandowski, who was deceased.
>
> IV. Trial Court denied Petitioner due process of law by abusing its discretion by allowing into evidence testimony of another home invasion.

Petitioner filed a "motion to amend habeas petition to allow withdrawal/ dismissal of ground I in its entirety" (ECF No. 19).  Accordingly, it is recommended that the Court dismiss ground I and allow this case to proceed on grounds II-IV only.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue

is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that by showing witnesses Allen Pauli and Thomas Kosciolek Petitioner's photograph taken from a bank surveillance video camera their identification of Petitioner was tainted and the trial court erred by allowing witnesses Pauli and Kosciolek to identify Petitioner during the trial. Petitioner asserts that witness Pauli only observed an individual walking in the road and initially described the individual as African American or Middle Eastern. Witness Pauli never identified Petitioner from the surveillance photo because he felt that the photo was too blurry to make an identification. Witness Kosciolek drove the individual he identified as Petitioner to the bank and was able to view the Petitioner while speaking with him and also observed the Petitioner's clothing. Witness Kosciolek was able to identify Petitioner as the individual that he drove to the bank from the bank surveillance photograph. Petitioner's claim was rejected by the Michigan Court of Appeals:

> Next, defendant argues that he was denied a fair trial by the tainted
> in-court identifications of him by Eisenhardt's neighbors, Allen

4

Pauli and Thomas Kosciolek. He claims that the pretrial identification procedure used by Detective Melissa Stevens—showing Pauli and Kosciolek still photographs from a surveillance video from a Flagstar Bank branch location—was impermissibly suggestive. We review a trial court's decision to admit identification evidence for clear error. *People v. McAllister,* 241 Mich.App 466, 472; 616 NW2d 203 (2000), remanded in part on other grounds 465 Mich. 884 (2001). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v. McDade,* 301 Mich. App 343, 357; 836 NW2d 266 (2013).

A photographic identification procedure can be so suggestive as to deprive the defendant of due process. *People v. Gray,* 457 Mich. 107, 111; 577 NW2d 92 (1998). To establish that an identification procedure denied him due process, a defendant must show that the procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. *People v. Williams,* 244 Mich.App 533, 542; 624 NW2d 575 (2001). The relevant inquiry is not whether the identification procedure was suggestive, but whether it was unduly suggestive in light of all the circumstances surrounding the identification. *People v. Kurylczyk,* 443 Mich. 289, 306; 505 NW2d 528 (1993). If a pretrial identification procedure is unduly suggestive, no testimony about the witness's identification at the procedure is admissible at trial. *Id.* at 303. However, the witness may still give an in-court identification if an independent basis for the identification, untainted by the pretrial identification procedure, is established. *Id.*

There was nothing unduly suggestive about the pretrial identification procedure with regard to Kosciolek. Kosciolek was shown still photographs from the Flagstar Bank surveillance video and asked if the person depicted in them was the person whom he had given a ride the morning of the incident. The use of surveillance photographs is generally not unduly suggestive because "such films provide a memory-refreshing device, showing the man who actually committed the [crime] as opposed to the picture of some possible suspect in the police files." *Id.* at 309–310 (quotation omitted). The still photographs showed the actual man whom Kosciolek picked up in his neighborhood and dropped off in the bank parking lot. Kosciolek was not shown photographs from police files depicting the likeness of a possible suspect. Accordingly, we are not left with a definite and firm conviction that the trial court made a mistake when it allowed evidence of the pretrial identification procedure and

5

> Kosciolek's subsequent in-court identification of defendant. *McDade,* 301 Mich.App at 356.
>
> There was also no error concerning the pretrial identification procedure with regard to Pauli. Pauli did not identify the person in the still photographs as the man he saw walking on Fairchild Road. He told Stevens that, although he recognized the clothing worn by the person, the still photographs were too blurry for him to make an identification of the person in them. The factors that a court should consider in making a determination whether a pretrial identification procedure is unduly suggestive assume that the pretrial identification procedure resulted in an identification. See *Kurylczyk,* 443 Mich. at 306. Further, as already stated, an identification procedure is constitutionally defective where it results in a substantial likelihood of misidentification. *Id.* The result of an unduly suggestive identification procedure is the preclusion of evidence regarding the identification at trial. *Id.* at 303. Because Pauli did not make a pretrial identification from the still photographs, there is no error in this case. Indeed, even if the identification procedure was unduly suggestive, because Pauli did not make an identification, there was no improper identification for the trial court to exclude. Accordingly, the trial court's decision to permit evidence of the pretrial identification procedure and Pauli's in-court identification of defendant was not clearly erroneous. *McAllister,* 241 Mich App at 472.

(Michigan Court of Appeals decision, ECF No. 8-17, PageID.1839-1840.)

The standard for determining the constitutionality of suggestive identification procedures focuses on whether under the totality of the circumstances the identification was reliable. *Neil v. Biggers*, 409 U.S. 188, 199 (1972). The Sixth Circuit stated:

> In circumstances where there was excellent opportunity for the victim to observe the offender and the identification was made promptly thereafter in the normal course of a police investigation, and under circumstances when a line-up would have been difficult or impossible, there is no per se violation of the due process clause of the Fourteenth Amendment in a one-on-one show-up.

*Hastings v. Cardwell*, 480 F.2d 1202, 1203 (6th Cir.1973).

It is Petitioner's burden to demonstrate that the in-court identifications were based upon impermissible pre-trial procedure. Petitioner must demonstrate that the photograph was

6

unduly suggestive and that the unfair suggestiveness was conducive to a "very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). The court must consider several weighted factors: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

   Witness Pauli never made an identification of Petitioner based on the surveillance photograph. Witness Kosciolek had the opportunity to observe Petitioner while he drove Petitioner to the bank where the surveillance camera was located. Under the totality of the circumstances, Petitioner has failed to show that the surveillance camera photograph was unduly suggestive causing a tainted identification. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

   Petitioner argues that the trial court erred by admitting statements of gold shop owner Hadrian Lewandowski and statements of the victim into evidence during trial. Petitioner asserts that the statements were hearsay and violated his rights under the Confrontation Clause.

   Respondent argues that the victim's statement to Detective Sergeant Stevens was never admitted during trial and cannot be a violation of the Confrontation Clause. As to the victim's statement, the trial court agreed with Petitioner. Contrary to Petitioner's assertion in the Michigan state appellate courts, the prosecution did not introduce the victim's statement that she had provided to Detective Sergeant Stevens. The victim had told Detective Sergeant Stevens that

the perpetrator wore a long brown coat which covered a smaller coat. She had stated that her attacker wore a blue jean jacket to the 911 operator. Witnesses Pauli and Kosciolek described Petitioner with a long brown coat. As the Michigan Court of Appeals noted, the trial court held that the victim's statement was not admissible under *Crawford v. Washington*, 541 U.S. 36 (2004). The trial court ruled that the victim's statement was hearsay and testimonial and if admitted would violate the Confrontation Clause. The trial court excluded the prosecutor from eliciting testimony regarding the victim's statements to Detective Sergeant Stevens. (Trial Proceedings, Volume V of VI, ECF No. 8-14, PageID.1592-1593.) Petitioner has acknowledged that he is not asserting a claim in this petition, as he did in the state appellate courts, regarding the victim's statement. (Petitioner's Limited Response to Answer in Opposition of Writ of Habeas Corpus, ECF No. 16, PageID. 2043.)

Prior to trial Hadrian Lewandowski passed away. Lewandowski had made statements to the Detective Lieutenant Ernatt. The Detective Lieutenant provided testimony regarding what Lewandowski had told him. The Michigan Court of Appeals found that although the admission of some of Lewandowski's statements were improper, the error was harmless and could not have violated Petitioner's confrontation rights.

> Here, after Ernatt visited the Gold Shop on February 24, 2011, Lewandowski called him and left a voicemail message. In the message, Lewandowski identified defendant as a person who had been in the Gold Shop the previous day. The admission of this statement by Lewandowski did not violate defendant's right of confrontation. The statement was not offered for the truth of the matter asserted. Rather, it was offered as background evidence to explain why Ernatt acted as he did in returning to the Gold Shop on February 25, 2011, to conduct further investigation. *Chambers*, 277 Mich App at 11.
>
> However, the remainder of Lewandowski's statements to Ernatt, as well as his statements to Willis and Hanna on February 25, 2011, were used for the truth of the matter asserted. After being shown a

8

photograph of defendant, Lewandowski told Ernatt that defendant had been in the Gold Shop on the day of the home invasion. He further said that defendant had thrown "some items" on the counter and asked if they were worth anything. In addition, after Ernatt looked in the tin can where Lewandowski kept the scrap and costume jewelry and saw a ring that matched a description given to him as one that was stolen from Eisenhardt, and which was subsequently identified by Eisenhardt's granddaughter as belonging to Eisenhardt, Lewandowski said that it was possible that defendant had brought in the ring. Lewandowski told Willis that defendant, on his last visit to the Gold Shop, which was between 11:00 a.m. and 12:00 p.m., had pawned the ring and a necklace with a magnifying glass. Then, after Hanna followed Lewandowski to his house to retrieve the necklace, Lewandowski told Hanna, when he handed over the necklace, that it was the necklace that defendant had pawned. These statements by Lewandowski, and especially those to Ernatt and Willis that defendant may have or did bring in the ring, implicated defendant in the home invasion. The statements, which show that defendant was in the Gold Shop on the day of the home invasion and that he pawned jewelry, which may have or did include the ring that belonged to Eisenhardt, were strong circumstantial evidence that defendant was the perpetrator of the home invasion. The statements went to the very heart of the prosecutor's case and therefore, were used for the truth of the matter asserted. See *People v Breeding*, 284 Mich App 471, 488; 772 NW2d 810 (2009). Because Lewandowski's statements were offered for the truth of the matter asserted, and because they were testimonial statements and defendant did not have a prior opportunity to cross-examine Lewandowski, the admission of Lewandowski's statements on February 25, 2011, to Ernatt, Willis, and Hanna violated defendant's right of confrontation. *Jackson*, 292 Mich App at 594.

A violation of the Confrontation Clause is subject to harmless error analysis. *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005). "A constitutional error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *People v Mass*, 464 Mich 615, 640 n 29; 628 NW2d 540 (2001) (quotation and alternation omitted). "[A] reviewing court must conduct a thorough examination of the record in order to evaluate whether it is clear, beyond a reasonable doubt, that the jury verdict would have been the same absent the error." *Shepherd*, 472 Mich at 348 (quotation omitted).

The trial court's error in admitting Lewandowski's February 25, 2011, statements to Ernatt, Willis, and Hanna was harmless beyond a reasonable doubt. *Id.* There was evidence other than

9

>Lewandowski's statements that connected defendant to the Gold Shop on February 23, 2011, the day of the home invasion. Ernatt testified that he received some transaction documents from Lewandowski.  One of these documents, the February 23, 2011, purchase order, did not list defendant's name as the customer or contain defendant's thumbprint. However, it did have a signature. As argued by the prosecutor at trial, the signature on the February 23, 2011 purchase order appears to be the same signature that is on the January 31, 2011 and February 14, 2011records of transaction, both of which listed defendant's name as the customer and contained defendant's thumbprint.6 Accordingly, after a comparison of the signatures on the February 23, 2011 purchase order and the two records of transaction, the signature on the  purchase order provides a connection between defendant and the Gold Shop on the day of the home invasion. In addition, the evidence showed that defendant was in the area of Eisenhardt's house at the time of the home invasion. Pauli testified that he saw defendant walking north on Fairchild Road at approximately 9:50 a.m. on February 23, 2011. Pauli thought it was unusual for defendant to be walking on Fairchild Road because the area was remote and it was very cold outside. Kosciolek testified that he saw defendant walking east on 22 Mile Road. According to Kosciolek, defendant was sweating terribly and, once in Kosciolek's vehicle, he never took off his hat and gloves and never looked at Kosciolek. Defendant told Kosciolek that he had been visiting a girl in a nearby trailer park, but Stevens never located anybody in the trailer park who knew defendant. Further, there was evidence that on February 25, 2011, defendant stole the car belonging to Charlotte Stewart and drove to New York. After his arrest in New York, when Investigator Brendan Tumulty asked him about the crimes he committed in Michigan, defendant replied that it was "some big shit" and that he would have to deal with the crimes when he got back to Michigan. Based on this evidence, it is clear beyond a reasonable doubt that a rational jury would have found defendant guilty absent the trial court's error in admitting Lewandowski's February 25, 2011 statements to Ernatt, Willis, and Hanna. *Shepherd*, 472 Mich at 348.

(Michigan Court of Appeals decision, ECF No. 8-17, PageID.1841-1843.) (footnotes omitted.)

The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Testimonial out-of-court statements by witnesses are barred under the Confrontation Clause unless witnesses are unavailable and defendants had a prior opportunity to cross-examine witnesses, regardless of

10

whether such statements are deemed reliable by court. *Crawford v. Washington*, 541 U.S. 36 (2004) (abrogating *Ohio v. Roberts*, 448 U.S. 56 (1980)). However, a statement taken by police officers during the course of an interrogation is nontestimonial when made under circumstances objectively indicating that the primary purpose of the interrogation is to enable police to meet an ongoing emergency. *See Davis v. Washington*, 547 U.S. 813 (2006). A dying declaration made to police by a shooting victim is non-testimonial under *Crawford*. *See Michigan v. Bryant*, 131 S. Ct. 1143 (2011).

Alleged errors concerning the Confrontation Clause of the Sixth Amendment are not deemed prejudicial in every case and are instead subject to harmless-error review. *Delaware v. Van Arsdall*, 475 U.S. 673, 680-81 (1986). A confrontation error is harmless if it did not have "substantial and injurious effect or influence in determining the jury's verdict." *Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)); *Cook v. Smith*, 471 F. App'x 437, 440 (6th Cir. 2012). To gauge this effect or influence on the jury, the Sixth Circuit applies the five factors set forth in *Van Arsdall*, i.e., "(1) the importance of the witness' testimony in the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross-examination otherwise permitted, and (5) the overall strength of the prosecution's case." *Vasquez*, 496 F.3d at 574 n.8 (internal quotation marks omitted) (quoting *Van Arsdall*, 475 U.S. at 684).

Applying the *Van Arsdall* factors, the testimony about what Lewandowski had told the Detective Lieutennat was important as it provided background information as to why the Detective Lieutenant investigated Lewandowski's gold shop and further provided evidence that Petitioner pawned the victim's jewelry at the gold dealer. Lewandowski's statements corroborated

11

the records obtained from the gold shop. The Detective Lieutenant received documents regarding the gold shop transactions made by Petitioner. That evidence indicated that Petitioner had made a transaction at the gold shop on the day of the home invasion. It was the Detective Lieutenant's job to oversee gold and jewelry transactions that were made at pawn shops. The gold dealers were required to submit paperwork to the Detective Lieutenant for every transaction over $10.00. As a result of his investigation, the Detective Lieutenant was able to obtain a photograph of Petitioner from the police database which depicted his tattoo on the left side of his neck. The Detective Lieutenant was also able to identify a ring belonging to the victim that was pawned at the gold shop. Defense counsel had the opportunity to cross-examine the Detective Lieutenant regarding Lewandowski's statements.

In addition, the prosecution presented evidence other than Lewandowski's statements that established that Petitioner committed the crime. Witness Pauli identified Petitioner waking near the victim's house at around 9:50 a.m. The victim called 911 and reported that she had been attacked at 10:11 a.m. Sometime after 10:00 a.m., witness Kosciolek drove Petitioner to a bank, which was near the gold shop where Petitioner pawned the stolen jewelry. Petitioner's fingerprints were identified on cards from the gold shop. After Petitioner was arrested in New York he admitted that he had committed some "big" crimes in Michigan and had used the stolen car to flee the State of Michigan.

Therefore, the asserted Confrontation Clause error in Petitioner's case did not have a substantial and injurious effect or influence in determining the jury's verdict. In the opinion of the undersigned, the decisions of the Michigan Court of Appeals and the state trial court did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a

decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that his due process rights were violated when evidence was admitted of a prior home invasion in 2006. The Michigan Court of Appeals found that the admission of the previous home invasion was improper, but that the error was harmless because the jury also properly heard evidence that Petitioner had committed a home invasion in Grosse Pointe Farms just two days after the home invasion that was the subject of the trial. The Michigan Court of Appeals concluded that since Petitioner was involved in the Grosse Pointe Farms home invasion and that evidence was properly admitted, the improper admission of the 2006 home invasion did not appear to be outcome determinative.

A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988). Petitioner asserts that the trial court erred in admitting prior bad acts evidence under Michigan law. However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v.*

> *Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-68.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Id*. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III*, 187 F.3d at 578. Only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, [] may [it] violate due process and thus warrant habeas review." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.), *cert. denied*, 540 U.S. 930 (2003) (citations omitted). In the opinion of the undersigned, the admission of the 2006 home invasion was not so egregious that is violated fundamental fairness.

Furthermore, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512 (citing *Estelle*, 502 U.S. at 75 (noting the Court did not hold that admitting prior injury evidence violated due process, meaning habeas relief on that issue was not warranted)), and *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967) (noting the Court rejected the idea that the Due Process Clause requires excluding prejudicial evidence)). In the opinion of the undersigned, the decisions of the Michigan Court of Appeals and the state trial court did not result

14

in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Therefore, it is recommended that the Court grant Petitioner's motion to withdraw ground I (ECF No. 19) and that the Court dismiss the petition.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                                 */s/ Timothy P. Greeley*
                                                 TIMOTHY P. GREELEY
                                                 UNITED STATES MAGISTRATE JUDGE

Dated: December ___, 2017