UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSEPH THOMAS REINER,

       Petitioner,

CASE NO. 2:15-CV-125

v.

HON. ROBERT J. JONKER

JEFFREY WOODS,

       Respondent.
_____/

# ORDER APPROVING AND ADOPTING
# REPORT AND RECOMMENDATION

The Court has reviewed Magistrate Judge Greeley's Report and Recommendation in this matter (ECF No. 22) and Plaintiff's Objection to it (ECF No. 23). Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 451 (3d ed. 2014). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED R. CIV. P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). The Court has reviewed de novo the claims and evidence presented to the Magistrate Judge; the Report and Recommendation itself; and Petitioner's Objections. After its review, the Court finds that Magistrate Judge Greeley's Report and Recommendation is factually sound and legally correct

and accordingly adopts its conclusion that Petitioner is not entitled to habeas corpus relief. The Court will, however, grant Petitioner a certificate of appealability with respect to Ground III of the petition.

## PROCEDURAL BACKGROUND

The Michigan Court of Appeals summarized the facts underlying Petitioner's convictions in this case as follows:

> Defendant's convictions arise from the February 23, 2011, home invasion of 49199 Fairchild Road in Macomb County, where 69-year-old Joanne Eisenhardt lived. A man, who was later identified as [Petitioner], stabbed Eisenhardt in the neck with two knives. The knives were still in Eisenhardt's neck when police and emergency medical services arrived at the house. The surgeon who operated on Eisenhardt to remove the knives was "flabbergasted" that no major organs were injured. However, Eisenhardt suffered declining health after the incident and died seven months later.

(4/17/14 Mich. Ct. App. Opinion (MCOA Op.), ECF No. 8-17, PageID.1838). On September 14, 2012, a Macomb County Circuit Court jury, after a six day trial, convicted Petitioner of assault with intent to commit murder, MICH. COMP. LAWS § 750.83; first-degree home invasion, MICH. COMP. LAWS § 750.11a(2); and felony murder, MICH. COMP. LAWS § 750.316(1)(b). Petitioner was sentenced by the trial court on November 14, 2012 to life without parole for the murder conviction, 37 years and 6 months to 60 years for the assault conviction, and 12 years and 6 months to 20 years for the home invasion conviction.

Petitioner unsuccessfully appealed his convictions through the state courts. On September 11, 2015, Petitioner filed his habeas petition which raised four grounds for relief, as follows:

> I. Petitioner is entitled to a new trial because he was deprived the effective assistance of counsel where counsel did not consult with or call an expert witness to dispute the conclusion that the death was homicide.
>
> II. Petitioner was denied a fair trial by the erroneous admission of tainted identifications by Allen Pauli and Thomas Kosciolek after each was shown a single photograph image of Petitioner.
>
> III. The Court denied Petitioner his 6th Amendment right of confrontation and his right to due process by erroneously allowing into evidence hearsay statements by pawn broker Hadrian Lewandowski, who was deceased.
>
> IV. Trial Court denied Petitioner due process of law by abusing its discretion by allowing into evidence testimony of another home invasion.

(Pet. 6-12, ECF No. 1, PageID.6-12). On December 13, 2017, the Magistrate Judge recommended denying all four grounds for relief. (ECF No. 22). Petitioner's Objection was filed on January 2, 2018. (ECF No. 23). The matter is ripe for decision.

## PLAINTIFF'S OBJECTION

After a de novo review, three of the four grounds in the petition can be considered in short order. Petitioner has in fact requested that Ground I of the Petitioner be dismissed (ECF No. 19), and Petitioner clearly states he has no objections with the Magistrate Judge's recommendation that Ground II also be dismissed (ECF No. 23, PageID.2080). Petitioner's objections with respect to Ground IV will also be overruled. Petitioner offers no convincing objection and merely restates and expands upon arguments already considered by the Magistrate Judge. The Court agrees with the Magistrate Judge's conclusion that Ground IV of the petition is without merit for the very reasons

the Report and Recommendation provides. Accordingly Petitioner is not entitled to relief on any of these three grounds.

Though the Court ultimately concludes Petitioner is also not entitled to relief as to Ground III, Petitioner's objection as to this ground warrants further discussion. This ground for relief centers on a violation of the Confrontation Clause that occurred when the state trial court admitted out-of-court statements by a witness, Hadrian Lewandowski, who had died before trial.[1] The prosecutor introduced those statements at trial through the testimony of Detective David Ernatt.

No one disputes that the admission of the hearsay statements of Hadrian Lewandowski violated the Confrontation Clause. The issue is whether the violation had a "substantial and injurious effect" as described in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), or was instead harmless error. *Fry v. Pliler*, 551 U.S. 112 (2007); *Vasquez v. Jones*, 496 F.3d 564, 574–75 (6th Cir. 2007). To make such a determination, Sixth Circuit courts look to the factors delineated in *Delaware v. Van Arsdall*, 475 U.S. 673 (1986). The factors include (1) "the importance of the witness'[s] testimony in the prosecution's case[;]" (2) "whether the testimony was cumulative[;]" (3) "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points[;]" (4) "the extent of cross-examination otherwise permitted;" and (5) "the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684.

In his Report and Recommendation, the Magistrate Judge carefully applied the *Van Arsdall* factors. (ECF No. 22, PageID.2074-2075). After reviewing the evidence presented at trial,

---

[1] At the state level, Petitioner asserted the trial court also erred in admitting statements of the victim that identified the clothing the perpetrator was wearing. But as the Michigan Court of Appeals discussed, the trial court in fact did not allow the statements from the victim to be admitted at trial. (MCOA Op. at 4 n.3, ECF No. 8-17, PageID.1841). Petitioner is not pursuing this argument in his petition.

excluding Mr. Lewandowski's hearsay statements, the Magistrate Judge found ample support for the jury's verdict. Accordingly, the Magistrate Judge determined that the Confrontation Clause violation was harmless error. In his Objection, Petitioner offers additional information to support his argument that the admission of the hearsay statements had a substantial and injurious effect on his trial. (ECF No. 23, PageID.2081-2083). His objections broadly seek to emphasize the importance of the hearsay testimony to his conviction, while attacking the accuracy and importance of the other evidence relied upon by the prosecution.

Applying the *Van Arsdall* factors, the Court concludes the hearsay statements were important to the prosecution's case. In addition to being introduced through Detective Ernatt, the statements were mentioned by the prosecutor during both the opening and closing arguments. Indeed, some of the first words out of the mouth of the prosecutor at trial related to Mr. Lewandowski's statements to Detective Ernatt. But looking at the record entirely apart from the testimony relating to Mr. Lewandowski's inadmissible statements, the prosecution's case against Petitioner remains exceedingly strong. The prosecution offered the statements of two eye witnesses who saw Petitioner near the victim's house at the time the crime occurred. Allen Pauli saw Petitioner walking northbound along Fairchild. Thomas Kosciolek resided just down the street of the victim. He was flagged down by Petitioner while driving his car, and gave Petitioner a ride to a bus stop. Mr. Kosciolek testified that as he drove Petitioner to the stop, Petitioner exhibited several unusual behaviors. For example he was sweating on a cold day, but did not take off his hat. After he was arrested in New York, Petitioner admitted he had committed some "big" crimes in Michigan. Officer Tumulty testified that he asked Petitioner about the Michigan crimes and Petitioner responded that it was something "he's obviously going to have to deal with" when he got back.

(ECF No. 8-13, PageID.1429). As the prosecutor noted, Petitioner was later asked what he knew about those crimes, and Petitioner responded "that's some big shit" in Michigan. (ECF No. 8-133, PageID.1429).

Petitioner argues that almost everything connected to the pawnshop, including the shop's business records, should not have been introduced during his trial. Petitioner offers no convincing argument for why the introduction of transaction documents violated the Confrontation Clause. And, at bottom, the only added value of Mr. Lewandowski's statements as relayed by Detective Ernatt at trial was that Petitioner showed up at the shop on the day of the theft with jewelry. There was plenty of other physical evidence, however, including the store records and the victim's granddaughter's identification of one of the rings, that did not violate Petitioner's Sixth Amendment rights and established the same thing. Accordingly, the Court agrees with the Magistrate Judge that the introduction of Mr. Lewandowski's statements did not have a substantial and injurious effect or influence in determining the jury's verdict. *Breecht*, 507 U.S. at 637-38.

None of the cases referenced by Plaintiff compels a different result. In *Ghent* the trial court admitted testimony that violated the defendant's Fifth Amendment rights. In that case, unlike here, the defendant did not assert actual innocence, but rather contested his mental state at the time of the crimes. The testimony of a psychiatrist with regard to whether the murder was premeditated and deliberate was crucial to this determination. In fact, it was the only direct evidence as to the defendant's state of mind. *Ghent v. Woodford*, 279 F.3d 1121, 1130 (9th Cir. 2002), *as amended* (Mar. 11, 2002). In *Stallings*, the case largely hinged on the testimony of an otherwise unreliable witness whose testimony was bolstered by inadmissible testimony. There was no other physical or other evidence linking the defendant to the drugs that were in question in that case. *Stallings v.*

*Bobby*, 464 F.3d 576, 583 (6th Cir. 2006). In *Merolillo* causation was central to the case, and the inadmissible statements from the autopsy pathologist was the only opinion that supported the prosecution's causation argument. As such, the Court found the evidence of the defendant's guilt "was not weighty, much less overwhelming." *Merolillo v. Yates*, 663 F.3d 444, 456 (9th Cir. 2011). Finally, in *Arnold*, the prosecutor stressed the defendant's refusal to answer (via "no comment" responses) to an officer's questions in the opening and closing arguments. The jury was instructed in such a way that it would have treated the defendant's silence as an admission of the truth of the officer's accusations. *Arnold v. Runnels*, 421 F.3d 859, 869 (9th Cir. 2005).

The common thread running through the decisions which have found reversible error is how the inadmissible testimony was central to the prosecutor's theory of the case. In many of these cases the inadmissable evidence was the only evidence relied upon by the prosecutor. The statements in this case, on the other hand, play much less of a lead role, and there is overwhelming evidence of Petitioner's guilt, even without the inadmissable testimony. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## CERTIFICATE OF APPEALABILITY

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a petitioner may not appeal in a habeas corpus case unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Federal Rules of Appellate Procedure extend to district judges the authority to issue certificates of appealability. FED. R. APP. P. 22(b); *see also Castro v. United States*, 310 F.3d 900, 901-02 (6th Cir. 2002) (the district judge "must issue or deny a [certificate of appealability] if an applicant files a notice of appeal pursuant to the explicit requirements of Federal Rule of Appellate Procedure 22(b)(1)"). However, a certificate of appealability may be issued "only

if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

To make this showing, the petitioner must demonstrate that reasonable jurists could "debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 894 (1983)). When a district court rejects a habeas petition on the merits, the required "substantial showing" is "straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

The Court finds Petitioner cannot make this showing with respect to Grounds I, II, or IV of his petition. With respect to Ground III of the petition, the Court is denying Petitioner relief because the introduction of inadmissible testimony at Petitioner's trial did not have a substantial and injurious effect on the jury's verdict. Although the Court concludes that Petitioner is not entitled to a writ of habeas corpus on this ground for relief, reasonable jurists could find the Court's assessment of Petitioner's constitutional claims debatable. Therefore, the Court will grant Petitioner a certificate of appealability with respect to Ground III of the petition.

**CONCLUSION**

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (ECF No. 22) is **APPROVED AND ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that:

1. Petitioner's Motion to Amend / Correct to Allow Dismissal of Ground I (ECF No. 19) is **GRANTED**.

2. The Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED** and this case is **DISMISSED**.

3. Petitioner is **GRANTED** a certificate of appealability with respect to Ground III of the habeas petition only. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated: March 13, 2018 /s/ Robert J. Jonker
ROBERT J. JONKER
CHIEF UNITED STATES DISTRICT JUDGE